J-S07019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL LIVINGSTON | : | |
| | : | |
| Appellant | : | No. 1761 EDA 2017 |

Appeal from the PCRA Order June 1, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001554-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL LIVINGSTON | : | |
| | : | |
| Appellant | : | No. 2149 EDA 2017 |

Appeal from the PCRA Order June 30, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001552-2011

BEFORE: BENDER, P.J.E., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J. **FILED JULY 09, 2018**

Daniel Livingston appeals from the order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without a hearing. Livingston alleges he was entitled to an evidentiary hearing, and ultimately a new trial, due to trial counsel's ineffectiveness during his jury trial. We affirm.

For a recitation of the complete factual background and procedural history of this case, we direct the interested reader to the memorandum decision written by a prior panel of this Court in response to Livingston's direct appeal. **See Commonwealth v. Livingston**, No. 3334 EDA 2012, at 1-6 (Pa. Super. filed Nov. 8, 2013) (unpublished memorandum).

Briefly, on September 28, 2009, Jesse Jones was walking to the store when he ran into Livingston, Gerald Outland, and Parrish Holmes standing on the corner of Locust and Crowson streets in Philadelphia. Jones observed Outland and Holmes get into a verbal argument that morphed into a physical altercation. At some point, Outland removed himself from the physical altercation, walked over to Livingston, removed a gun from Livingston's waistband, and used the gun to shoot Holmes in the stomach. Holmes was taken to the hospital for treatment. When the police interviewed Holmes concerning his gunshot wound the next day, Holmes informed the police that Outland shot him with Livingston's gun.

One month later, Detective William Knecht interviewed Holmes again concerning the events of September 28, 2009. Holmes identified both Outland and Livingston from a photo array. Prior to leaving the interview, Holmes, pointing to the photograph of Livingston, informed Detective Knecht, "if you ever find me dead, he did it." N.T., Trial, 7/25/12, at 157. Based upon this information, Detective Knecht obtained and executed search warrants on both Outland and Livingston's homes on November 5, 2009. Subsequent to the search, Livingston agreed to meet with the detectives, but failed to follow

through. An arrest warrant was issued for Livingston. However, police were unable to locate him.

Two days after the police executed the search warrants, Jones ran into Holmes. Holmes informed Jones that "he was going to get his gun, because [Livingston] was saying he was going to kill him." N.T., Trial, 7/26/12, at 67-68. Ten minutes later, Jones observed Holmes walking towards Boyd and Woodlawn Street, approximately one block from where Jones was standing on Chew Street. Holmes walked up to an individual and spoke to him for a few seconds before being shot five times. Holmes did not survive.

Police recovered a Ruger 9-mm handgun and an ammunition magazine near the scene. The police were able to determine that all of the cartridge casings recovered from the scene were fired from the Ruger 9-mm handgun. Additionally, three fingerprints recovered from the ammunition magazine matched Livingston's fingerprints.

Based upon this evidence, Livingston was arrested and charged with numerous offenses arising from these two incidents. A jury trial commenced on July 25, 2012. At trial, the Commonwealth presented, in part, the testimony of Detective Knecht and Jones. Detective Knecht testified regarding Holmes's identification of Livingston and his belief that Livingston would kill him. Jones identified Livingston as the individual who shot Holmes and recounted that Livingston had informed him before Holmes's death that "he was going to kill [Holmes] because he thought he was telling on him." N.T., Trial, 7/26/12, at 63-65.

On July 31, 2012, the jury convicted Livingston of first-degree murder, intimidation of a victim, retaliation against a victim, two counts of carrying a firearm without a license, two counts of possessing an instrument of crime, and two counts of possession of a firearm by a prohibited person.[1]

A panel of this Court affirmed his judgment of sentence on November 8, 2013, and our Supreme Court denied his subsequent petition for *allocatur*.

On December 3, 2014, Livingston filed a timely *pro se* PCRA petition. The PCRA court appointed counsel who later filed an amended petition. The PCRA court issued notice of its intent to dismiss Livingston's petition without a hearing, and ultimately dismissed the petition.[2] This timely appeal follows.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." ***Commonwealth v.***

---

[1] As the two counts of possession of a firearm by a prohibited person required proof of Livingston's prior felony as an element of the offense, the trial court severed these charges from its first charge to the jury, and only charged the jury on these offenses once they had returned with a verdict on Livingston's other charges.

[2] While the record reflects that Livingston's PCRA petition collectively challenged his convictions under both docket numbers, it appears that a clerical error resulted in different dismissal dates for each docket number. Thus, the petition was dismissed on June 1, 2017, for the claims arising under docket number CP-51-CR-0001554-2011, while the claims arising under docket number CP-51-0001552-2011 were not dismissed until June 30, 2017. As Livingston filed a timely notice of appeal from each of these orders, this clerical error does not affect our review.

*Edmiston*, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). On questions of law, our scope of review is *de novo*. *See id*.

"The right to an evidentiary hearing on a post-conviction petition is not absolute." *Commonwealth v. Walls*, 993 A.2d 289, 295 (Pa. Super. 2010) (citations and brackets omitted). A PCRA court may decline to hold a hearing where it can determine, from the record, that there are no genuine issues of material fact. *See Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). "With respect to the PCRA court's decision to deny a request for an evidentiary hearing … such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citation omitted).

Livingston's sole issue on appeal asserts the ineffective assistance of trial counsel. We presume counsel provided effective assistance; Livingston has the burden of proving otherwise. *See Commonwealth v. Pond*, 846 A.2d 699, 708 (Pa. Super. 2004). "In order for [an a]ppellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which … so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Johnson*, 868 A.2d 1278, 1281 (Pa. Super. 2005) (citation omitted). Further,

> [an a]ppellant must plead and prove by a preponderance of the evidence that: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) [a]ppellant suffered prejudice because of counsel's action or inaction.

*Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011) (citations omitted). A failure to satisfy any prong of the test will require rejection of the entire claim. *See Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014).

"Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Barnett*, 121 A.3d 534, 540 (Pa. Super. 2015) (citations and internal quotation marks omitted). "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*) (citations and internal quotation marks omitted).

Livingston claims that trial counsel was ineffective in failing to object to the admission of evidence offered in the form of inadmissible hearsay. Specifically, Livingston challenges the introduction of Holmes's statement, elicited through Detective Knecht's testimony, that if Detective Knecht ever found Holmes dead, it was at Livingston's hand. *See* N.T., Trial, 7/25/12, at 157. Livingston alleges that this statement is inadmissible hearsay, that trial counsel had no reasonable basis in failing to object to this statement, and that this statement was extremely prejudicial.

Conversely, the Commonwealth and PCRA court contend Livingston's claim of ineffectiveness fails because the challenged statement is admissible evidence. Specifically, the PCRA court found that the statement, while

constituting hearsay, was admissible under Pennsylvania Rule of Evidence 804(b)(6) *Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability*. We agree.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted by the declarant." **Commonwealth v. Puksar**, 740 A.2d 219, 225 (Pa. 1999) (citation omitted). While our rules of evidence generally prohibit the admission of hearsay, there are several exceptions to the rule. Relevant to the instant case, Rule of Evidence 804(b)(6) provides:

> **Rule 804. Hearsay exceptions; declarant unavailable**
>
> **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:
>
> > (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness …
>
> **(b) The Exceptions**. The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> > (6) *Statement Offered Against a Party That Wrongfully Caused the Decedent's Unavailability*. A statement offered against a party that wrongfully caused -- or acquiesced in wrongfully causing -- the declarant's unavailability as a witness, and did so intending that result.

Pa.R.E. 804(a)(4), (b)(6).

Under this rule, our courts have found that statements made by a decedent against defendant, made prior to the decedent's death, are not barred by the rules against hearsay if the Commonwealth shows that decedent

was killed in an attempt to prevent him from participating as a witness in another matter. ***See Commonwealth v. Kuncle***, 79 A.3d 1173, 1186-1187 (Pa. Super. 2013) (finding decedent's statement that he was afraid defendant would attempt to kill him admissible under Rule 804(b)(6) where decedent was planning to be a witness against defendant in a child custody dispute); ***see also Commonwealth v. King***, 959 A.2d 405, 413-417 (Pa. Super. 2008) (holding that Pa.R.E. 804(b)(6) allowed hearsay statements of murder victim shot to prevent the victim's testimony regarding illegal arms purchase).

Here, the evidence adduced at trial clearly supports the conclusion that Livingston's alleged motive in killing Holmes was to make him unavailable as a witness in in a trial arising from the September 28, 2009 incident. Livingston was aware that he was being investigated concerning this incident. Further, he informed Jones that "he was going to kill [Holmes] because he thought he was telling on him." N.T., Trial, 7/26/12, at 64.

As the Commonwealth presented sufficient evidence that Livingston killed Holmes in order to keep him from testifying, and Holmes was clearly unavailable as a witness, this evidence was properly introduced under the forfeiture by wrongdoing exception to the hearsay rule. Accordingly, Livingston's claim of trial counsel error lacks arguable merit and, thus, his sole ineffectiveness claim fails. The PCRA court committed no error in dismissing the petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/9/18